UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Derrick E. Kirtman, | Civil Action No.: 4:16-cv-2839-AMQ |
| Plaintiff, | |
| vs. | |
| | **ORDER AND OPINION** |
| Chaplain Helbig, S.I.A. Stivers, Warden Cruz, Assistant Hospital Administrator Whitehurst, and Assistant Warden Landford, | |
| Defendants. | |

Plaintiff, Derrick E. Kirtman ("Plaintiff"), a federal prisoner who is proceeding pro se, brings this civil rights action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Plaintiff's complaint initially alleged Defendants Chaplain Helbig, S.I.A. Stivers, Warden Cruz, Assistant Hospital Administrator Whitehurst, and Assistant Warden Landford ("Defendants"), as well as other defendants from California who are no longer parties, violated his First Amendment right to exercise his religious beliefs, his right to file grievances without being retaliated against by prison officials, and his right to not be placed in segregation and transferred as a means of retaliation for filing grievances. He further alleged that Defendants violated Plaintiff's Eighth Amendment rights, through deliberate indifference to his medical needs, by denying or delaying his medications and surgeries. (ECF No. 1.)

In accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 D.S.C., this matter was referred to United States Magistrate Judge Thomas E. Rogers for pretrial handling. The Magistrate Judge prepared a thorough Report and Recommendation ("Report") which

1

recommends that Defendants' Motion for Summary Judgment (ECF No. 85) be granted and this case dismissed in its entirety. (ECF No. 130.) For the reasons set forth herein, the Court adopts the Report and Defendants' Motion for Summary Judgment (ECF No. 85) is GRANTED.

## BACKGROUND AND PROCEDURAL HISTORY

The Report sets forth in detail the relevant facts and standards of law. The Court incorporates those facts and standards and summarizes below only in relevant part. Plaintiff filed his complaint on August 11, 2016. (ECF No. 1.) The Court previously entered an order adopting a Report and Recommendation of the Magistrate Judge which dismissed Plaintiff's First Amendment religious freedom claims and several defendants from California. (ECF No. 47.) Therefore, the claims remaining in this matter are for an alleged denial of Plaintiff's First Amendment right to file grievances without retaliation and for violation of his Eighth Amendment right to medical treatment based on alleged deliberate indifference. Likewise, the remaining Defendants are Helbig, Stivers, Cruz, Whitehurst and Landford. These Defendants brought a Motion for Summary Judgment on these claims on June 9, 2017. (ECF No. 85.) Plaintiff filed a Response in Opposition to the Motion for Summary Judgment on December 4, 2017. (ECF No. 116.) The moving Defendants filed a Reply in Opposition to Plaintiff's response to Defendants' Motion for Summary Judgment on December 22, 2017 (ECF No. 125), and Plaintiff filed a Sur-reply on January 16, 2018. (ECF No. 126.)

On January 26, 2018, the Magistrate Judge issued his Report recommending that the Motion for Summary Judgment be granted and this case dismissed in its entirety. (ECF No. 130.) Plaintiff was advised of his right to file "specific written objections" to the Report "within fourteen (14) days of the date of service" of the Report. (ECF No. 130-1.) The Clerk's office received Plaintiff's objections on February 20, 2018. (ECF No. 133.) Defendants filed a response to Plaintiff's objections on March 5, 2018. (ECF No. 135.) Plaintiff filed a reply to Defendants'

response on March 19, 2018. (ECF No. 138.)   With replies and responses filed, the Motion and the Report are ripe for review.

## STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this Court.  The recommendation has no presumptive weight.  The responsibility for making a final determination remains with this Court.  *Mathews v. Weber*, 423 U.S. 261, 270 (1976).   The Court is charged with making a *de novo* determination of any portions of the Report to which a specific objection is made.  The Court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions.  *See* 28 U.S.C. § 636(b)(1).  The timely filing of objections to a magistrate judge's recommendation is necessary to preserve appellate review of the substance of that recommendation when the parties have been warned that failure to object will waive appellate review.  *Wright v. Collins,* 766 F.2d 841, 845-46 (4th Cir.1985); *see also Bruce v. Attorney Gen. of State of S.C.*, 35 F.3d 555 (4th Cir. 1994)(unpublished decision).  Absent a timely, specific objection—or as to those portions of the Report to which no specific objection is made—this Court "must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

## ANALYSIS AND DISCUSSION

In his Report, the Magistrate Judge first acknowledged that Plaintiff's constitutional violation claims against agents of the federal government fall under the Supreme Court case *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) to the extent that *Bivens* and its progeny allow for such claims.  (ECF No. 130 at 5.)   As

acknowledged by the Magistrate Judge, there are limited instances "in which the Court has approved of an implied damages remedy under the Constitution itself." (ECF No. 130 at 5). The Magistrate Judge gave careful attention to the recent Supreme Court decision in *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017), whereby the Supreme Court emphasized that expanding the *Bivens* remedy is disfavored, and further highlighted the "special factors" a court must perform to determine whether a *Bivens* action should be available in a new context. (ECF No. 130 at 6.)

In light of *Bivens* and its progeny, the Magistrate Judge first gave specific and careful consideration to Plaintiff's First Amendment retaliation claim. The Magistrate Judge highlighted several cases across the country whereby federal courts have expressly declined to recognize a *Bivens* claim in the First Amendment retaliation context, particularly in light of *Ziglar*.[1] (ECF No. 130 at 8-9.) The Magistrate Judge recommended that this Court decline to extend the *Bivens* remedy to Plaintiff's First Amendment retaliation claim.

The Magistrate Judge also addressed Plaintiff's medical indifference claim, first finding that a *Bivens* remedy does not extend to individuals such as Defendant Whitehurst who is a commander in the United States Public Health Services ("PHS"). (ECF No. 130 at 10.) The Magistrate Judge then addressed the merits of Plaintiff's Eighth Amendment claim against non-medical personnel Defendants Helbig, Stivers, Cruz and Langford. (ECF No. 130 at 11.) In view of the record, the Magistrate Judge concluded that the medical records failed to indicate any involvement of Stivers, Cruz or Langford in the decisions regarding Plaintiff's medical treatment

---

[1] The Magistrate Judge also noted the Fourth Circuit decision in *Tobey v. Jones*, 706 F.3d 379 (4th Cir. 2013) which concerned a potential *Bivens* First Amendment claim brought by an airline passenger against Transportation Security Administration ("TSA") officials. The Fourth Circuit Court of Appeals held that the complaint raised a plausible First Amendment retaliation claim sufficient to survive a qualified immunity-based 12(b)(6) motion to dismiss. The Magistrate Judge determined that the Fourth Circuit, however, assumed a *Bivens* claim for First Amendment retaliation was proper, but did not perform the Supreme Court's "special factors analysis."

(ECF No. 130 at 15.) The Magistrate Judge specifically noted that Plaintiff made no specific allegations against Helbig with respect to his medical treatment. (ECF No. 130 at 12.) Accordingly, the Magistrate Judge recommends that Defendants' Motion for Summary Judgment be granted as to this claim, having concluded that Plaintiff failed to present sufficient evidence to satisfy the high and exacting deliberate indifference standard.

Plaintiff filed objections to the Magistrate Judge's recommendation. As an initial matter, Plaintiff objects generally to the recommendation that Defendants' Motion for Summary Judgment be granted, and also maintains that the Report fails to "address the gravity of the entirety of the situation." (ECF No. 133 at 1.) The Court find that these objections are the sort of "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). These general objections are, therefore, overruled.

Plaintiff makes additional objections concerning the Magistrate Judge's treatment of facts in the record concerning retaliatory placement and conduct. (ECF No. 133 at 2, 6-7.) Plaintiff also contends that the Report fails to address the absence of any remedy for a "clear violation of constitutional rights." (ECF No. 133 at 2, 4-5.) He asserts that Defendants are not entitled to qualified immunity, rendering summary dismissal improper. (ECF No. 133 at 2-3.) Plaintiff then makes several "factual objections" to the Report concerning his medical records. (ECF No. 33 at 5-7.)

The Court has given careful consideration to Plaintiff's objections, but does not find that Plaintiff's objections point to any facts or authority that would undermine the Magistrate Judge's analysis or recommendation. Further, the Court has not found any such facts or authority in its *de novo* review of the record. The Court agrees with the Magistrate Judge that summary judgment is

appropriate on these claims for the reasons set forth herein and in the Report. Accordingly, Plaintiff's objections are overruled.

I. **OBJECTIONS CONCERNING FIRST AMENDMENT RETALIATION CLAIM**

As to Plaintiff's objections concerning his First Amendment retaliation claim, the Court finds that the Magistrate Judge correctly concluded that Congress and the courts have not expanded the *Bivens* remedy to include First Amendment retaliation claims. The Magistrate Judge correctly analyzed the Supreme Court's decision in *Ziglar v. Abbasi*, which controls the Court's consideration of Plaintiff's claims. In *Ziglar*, the Supreme Court thoroughly detailed the history of *Bivens*. In *Bivens*, the Court held that even in the absence of statutory authorization, it would enforce a damages remedy in a narrow context to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures.[2] *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017).

As *Ziglar* details, the Supreme Court has only recognized an implied cause of action in two other cases involving other constitutional violations. Those cases are Davis *v. Passman*, 442 U.S. 228 (1979) (Fifth Amendment Due Process Clause provided remedy for gender discrimination) and *Carlson v. Green,* 446 U.S. 14 (1980)(Eighth Amendment Cruel and Unusual Punishment Clause). Thus, three cases— *Bivens*, *Davis* and *Carlson*— represent the only instances where the Supreme Court has approved an implied damages remedy under the Constitution itself. *Id.* at 1855.

In *Ziglar,* the Supreme Court expressed significant caution regarding the creation of implied causes of action to enforce the Constitution. *Ziglar*, 137 S. Ct. at 1857 (internal citation

---

[2]Of note, Congress did not create an analogous statute for federal officials similar to 42 U.S.C. § 1983, which entitles an injured person to money damages if a state official violates his or her constitutional rights.

omitted). Further, the Court "has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id.* For instance, the Court expressly declined to create an implied damages remedy in a First Amendment suit against a federal employer in *Bush v. Lucas*, 462 U.S. 367 (1983). There, the Court indicated that it was convinced that "Congress is in a better position to decide whether or not the public interest would be served by creating it." *Bush v. Lucas*, 462 U.S. 367, 390 (1983).

*Ziglar* makes very clear that a *Bivens* remedy will not be available if there are "special factors counselling hesitation in the absence of affirmative action by Congress." *Ziglar*, 137 S. Ct. at 1857 (quoting *Carlson v. Green,* 446 U.S. 14, 18 (1980)(internal quotations omitted). The Supreme Court laid out the "special factors" to be considered. It concluded that the relevant inquiry "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1857–58; *see also Hernandez v. Mesa*, 137 S. Ct. 2003, 2006 (2017)(remanding matter to the Court of Appeals for further proceedings in consideration of the reasoning and analysis of *Ziglar v. Abbasi* and to allow the parties to brief and argue its significance).

*Ziglar* also sets out the test this Court must apply to analyze whether Plaintiff's *Bivens* claim may proceed. First, the Court must determine whether this case is "different in a meaningful way from previous *Bivens* cases decided by [the] Court." *Ziglar*, 137 S. Ct. at 1859. If so, the context is new and the Court must then apply a "special factors analysis" before allowing a damage suit to proceed. *Id.* at 1860. *Ziglar* provides a non-exhaustive list of differences that are meaningful enough to make a context new, i.e., "the constitutional right at issue; the generality or specificity of the official action; . . . or the presence of potential special factors that previous Bivens cases did not consider." *Id.* at 1860.

The Court will first consider whether Plaintiff's First Amendment retaliation claim is meaningfully different from other cases where the Supreme Court has afforded *Bivens* remedies. As noted above, to date, the Supreme Court has only recognized a *Bivens* remedy in the context of the Fourth, Fifth and Eighth Amendments. With the case law in view, the Court finds that Plaintiff's First Amendment retaliation claim is unlike the Fourth Amendment unreasonable seizure claim at issue in *Bivens*, the gender discrimination claim in *Davis* or the deliberate indifference claim in *Carlson.* The Court notes that the Supreme Court has assumed in some instances that a *Bivens* remedy is available in the First Amendment claim. *See Wood v. Moss*, 134 S. Ct. 2056, 2066 (2014) (acknowledging that the Supreme Court has "several times assumed without deciding that *Bivens* extends to First Amendment claims."); *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (assuming, without deciding, that a free exercise claim was available because the issue was not raised on appeal, but noting that the reluctance to extend *Bivens* "might well have disposed of respondent's First Amendment claim of religious discrimination"). However, it has not taken the affirmative step of recognizing one. Indeed, the Supreme Court has indicated that "[it] has never held that *Bivens* extends to First Amendment claims." *Reichle v. Howards*, 566 U.S. 658, 663, 132 S. Ct. 2088, 2093 n.4 (2012).

The Court has also considered the Fourth Circuit's decision in *Tobey v. Jones*, 706 F.3d 379 (4th Cir. 2013). As noted in footnote one above, that decision involved a potential *Bivens* First Amendment retaliation claim brought by an airline passenger against the TSA. The Fourth Circuit held that the complaint pled a plausible First Amendment claim sufficient to satisfy a qualified immunity-based 12(b)(6) motion to dismiss. However, the decision appears to assume such a claim was proper instead of deciding the ultimate fate of the claim under *Bivens*. Further, because *Tobey* was decided before *Ziglar,* the Fourth Circuit did not evaluate the propriety of

such a claim using the *Ziglar* "special factors analysis." For those reasons, the Court does not believe that *Tobey* constitutes binding precedent on the issue of whether a *Bivens* claim for First Amendment retaliation is proper. Thus, considering the foregoing, the Court finds the context Plaintiff's claim is new. Accordingly, the Court must apply the "special factors analysis" to determine if any factors counsel hesitation in implying a *Bivens* remedy.

Turning to the "special factors analysis," this Court must consider whether "the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Ziglar*, 137 S.Ct. at 1857–58. Specially, the "decision to recognize a damages remedy requires an assessment of its impact on governmental operations systemwide" and the "projected costs and consequences to the Government itself" when the legal system is used to "bring about the proper formulation and implementation of public policies." *Id.* at 1858. To that end, "if there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.* The Court has clearly expressed its "general reluctance to extend judicially created private rights of action." *Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386 (2018).

Plaintiff's objection argues there is an absence of any remedy for a violation of his constitutional rights. However, Defendants' Motion for Summary Judgment details the Bureau of Prisons administrative grievance process and the informal resolution process available to Plaintiff. (ECF No. 85 at 6-9.) Further, the Magistrate Judge addressed the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (codified as amended at 42 U.S.C. § 1997 e (a) (1996)), in his Report. The Magistrate Judge notes that the PLRA indicates Congress's efforts to address and remedy matters of prisoner abuse through the exhaustion provisions. *See Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion

is mandatory under the PLRA and that unexhausted claims cannot be brought in court"); *see also Corr. Serves. Corp. v. Malesko*, 534 U.S. 61, 74 (2001).

Significantly, the fact that Congress has addressed the general area at issue with Plaintiff's claim and not elected to enact a remedy is revealing. "Legislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation." *See Ziglar*, 137 S. Ct. at 1865. Congress's action in this area in light of the PLRA and otherwise not only demonstrates the existence of alternative remedies, but also causes pause for the judicial creation of additional damage remedies. *Id.* "In sum, if there are sound reasons to think that Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, the courts must refrain from creating the remedy in order to respect the role of Congress in determining the nature and extent of federal-court jurisdiction under Article III." *Id.* at 1858.

Having conducted the "special factors analysis," the Court concludes that Plaintiff does have other avenues for relief, and there are significant economic and governmental concerns with recognizing an implied cause of action in this instance. For these reasons and for the reasons set forth in the Report, the Court overrules Plaintiff's objections and declines to find an implied *Bivens* cause of action for Plaintiff's First Amendment retaliation claim. Accordingly, the Court need not further entertain Plaintiff's objections concerning the factual support for such a First Amendment retaliation claim and the Magistrate Judge's consideration of the same. The treatment, recitation and analysis of the facts was proper in light of the applicable law which forecloses such a claim at this time.

## II. OBJECTIONS CONCERNING DELIBERATE INDIFFERENCE CLAIM

Plaintiff has also generally raised some objections about the Magistrate Judge's Report concerning his Eighth Amendment deliberate indifference claim and the analysis of the facts and medical evidence in the record regarding his conditions. (ECF No. 133 at 5-7.) The Court will first evaluate this claim and Plaintiff's objections under *Ziglar*. The Magistrate Judge correctly found that Plaintiff's medical indifference claim would be allowed to proceed under *Carlson* with respect to Defendants Helbig, Stivers, Cruz and Langford. As noted above, *Carlson* provides a remedy for claims of deliberate indifference to serious medical needs under the Eighth Amendment. Therefore, the Court need not conduct a "special factors analysis" before addressing the merits of the claim. The Magistrate Judge also correctly found that a *Bivens* remedy does not extend to Defendant Whitehurst who is an officer of the United States Public Health Services based on the Supreme Court's decision in *Hui v. Castaneda*, 559 U.S. 799, 806 (2010). (ECF No. 130 at 10.) Thus, Plaintiff's Eighth Amendment claim against Defendant Whitehurst is easily dismissed as a matter of law.

Although Plaintiff can maintain a deliberate indifference claim as to Defendants other than Whitehurst, Plaintiff's objections do not allege any new facts which show that the moving Defendants acted with deliberate indifference to Plaintiff's medical needs. Non-medical prison employees can be found to have acted with deliberate indifference by "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). Under the "high 'deliberate indifference' standard, even subjective knowledge of [prisoner's] medical needs is not enough; the officers must have actually known that their response was inadequate to address those needs…" *Iko v.*

*Shreve*, 535 F.3d 225, 242 (4th Cir. 2008). Further, non-medical prison personnel are entitled to rely on the expertise of health care providers. *Id.*

Besides conclusory statements and hypotheticals, Plaintiff did not allege any facts to show that these non-medical personnel Defendants, i.e., Helbig, Stivers, Cruz and Langford had actual or constructive knowledge of any risk of constitutional injury, that these Defendants demonstrated deliberate indifference to that risk, or that the actions of these Defendants were causally related to any injury suffered by him. Thus, even after drawing all inferences in a light most favorable to Plaintiff, as this Court must do, the Court finds that the Magistrate Judge was correct in his conclusion that Plaintiff's response to the Motion for Summary Judgment and the evidence in the record fails to create a genuine issue of fact as to whether Defendants Helbig, Stivers, Cruz and Langford violated Plaintiff's Eighth Amendment constitutional rights with respect to the medical treatment of Plaintiff's injuries.

### III.  OBJECTION CONCERNING QUALIFIED IMMUNITY

Last, although the Magistrate Judge did not address Defendants' qualified immunity argument, Plaintiff asserts that Defendants are not subject to qualified immunity (ECF No. 133 at 2.) Because the Magistrate Judge did not recommend granting Defendants summary judgment based on qualified immunity, this "objection" to the Report is misplaced and is thus overruled.

### CONCLUSION

Having conducted a *de* novo review of the record in this case, the Court agrees with the thorough and well-reasoned analysis of the Magistrate Judge. The parties' objections are overruled, and the Report is adopted and incorporated herein by reference to the extent not inconsistent with this Order. Accordingly, for the reasons set forth herein and in the Magistrate

Judge's Report, Defendants' Motion for Summary Judgment is granted and this case is dismissed in its entirety.

    **IT IS SO ORDERED.**

/s/ A. Marvin Quattlebaum, Jr.  
United States District Judge

July 27, 2018  
Greenville, South Carolina